UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROCK COREY TANKSLEY, *Plaintiff*, v. RUSSELL CARRASQUILLO, et al., *Defendants*. | Case No. 25-CV-9281 (KMK) <br> ORDER & OPINION |

Appearances:

Brock Corey Tanksley
New City, NY
*Pro se Plaintiff*

Adam I. Kleinberg, Esq.
David Berris, Esq.
Guercio & Guercio LLP
Farmingdale, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Brock Tanksley ("Plaintiff") brings this pro se Action against Russell Carrasquillo ("Carrasquillo"),[1] Christopher Macaluso ("Macaluso"), Marc Baiocco ("Baiocco"), Emil Bernado ("Bernado") and Clarkstown Central School District (the "District," and collectively, "Defendants"), seeking equitable relief and monetary damages for asserted violations of state and federal laws forbidding discriminatory employment practices. (*See* Compl. (Dkt. No. 1).) Before the Court is Defendants' Motion to Dismiss certain of Plaintiff's claims (the

[1] Plaintiff variably refers to Defendant Carasquillo as "Russel Carrasquillo," "Russel Carrisquillo," and "Russel Carisquillo." (*See generally* Compl.) For the sake of clarity, and because it is the spelling used in Defendants' filings, the Court refers to this Defendant as "Carrasquillo."

"Motion"). (*See* Mot. to Dismiss ("Mot.") (Dkt. No. 17).) For the reasons that follow, the Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The facts described are drawn from the Complaint, and are assumed true solely for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).[2]

Plaintiff was employed at the District, which is in Rockland County, New York, as a bus driver. (*See* Compl. 8–9.) Plaintiff asserts that as the result of various discriminatory actions, he was terminated from employment, not promoted, provided with terms and conditions of employment different than similarly situated employees, retaliated against, harassed or subjected to a hostile work environment, blackmailed, and subject to threats of termination. (*Id.* at 5.) While the Complaint is not a model of clarity, the Court has endeavored to group Plaintiff's similar allegations together and present them chronologically when possible.

Plaintiff alleges various categories of inaction and retaliation upon his reporting misconduct to certain of the Defendants. For instance, Plaintiff claims that he witnessed an

---

[2] Defendants attached certain exhibits not included or mentioned in Plaintiff's Complaint to their Motion to Dismiss. (*See* Mot., Ex. A (Dkt. No. 17-2).) These exhibits do not bear on the outcome of this Motion, and Plaintiff appears to oppose their being considered by the Court at this juncture due to their being misleading and inaccurate. (Response to Mot. ("Pl.'s Opp'n") 1–2 (Dkt. No. 19).) "Mindful of the principle that even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible" on a Motion to Dismiss pursuant to Rule 12(b)(6), *Fox v. Liberty Mut. Fire Ins. Co.*, No. 24-CV-7330, 2026 WL 867150, at *3 (S.D.N.Y. Mar. 30, 2026) (quotation marks omitted), and further noting that their contents do not bear upon the disposition of the instant Motion, the Court does not describe these documents further or consider them in conjunction with the determinations made herein.

employee at the District "commit a lude act behind another employee['s] back." (Compl. 5.) He told District Director of Transportation Carrasquillo,[3] who refused to bring the report to the District's Administration office and threatened Plaintiff and other employees not to report the incident. (*Id.*)

Plaintiff alleges that he was placed "under constant surveillance"; an employee and/or friend of Carrasquillo would "constantly video record" him. (*Id.* at 8.) Carrasquillo apparently questioned the nature of Plaintiff's relationship with a female employee, asking about what they would talk about with each other, and suggesting that Plaintiff and this employee should have nothing to talk about. (*Id.*) Plaintiff says that the female employee said Carrasquillo did not like Plaintiff, and that Carrasquillo, who is married, had pursued the female employee in the past. (*Id.*)

In what appears to be a separate incident, Plaintiff reported a white coworker's use of a racially motivated insult about Plaintiff, who is Black, to other employees in a public space, and reveals private personnel file information. (*Id.*) In response, Carrasquillo and District Assistant Director of Transportation Bernado allegedly said the incident was "none of their business," instead describing it as union business. (*Id.*) Thereafter, Assistant Superintendent Macaluso denied a promotion that Plaintiff had been promised. (*Id.*) Carrasquillo told Plaintiff that the denial of the position was directly related to the incident with the racially motivated insult. (*Id.*

[3] Defendants have provided judicially noticeable sources as to each Defendant's role at the District. (*See* Mot., Ex. Mem. of L. ("Defs.' Mem.") 3 (Dkt. No. 17-4).) Accordingly, the Court incorporates each Defendant's title as described on the government websites cited therein. *76 Route 6 Holdings Inc. v. Town of Yorktown*, No. 25-CV-693, 2026 WL 867180, at *4 (S.D.N.Y. Mar. 30, 2026) (taking judicial notice of meeting minutes from government website); *M.G. v. New York State Off. of Mental Health*, 572 F. Supp. 3d 1, 8 n.5 (S.D.N.Y. 2021) (taking "judicial notice of the publicly available government documents, such as the state websites, policies, and regulations").

at 8–9.) Carrasquillo described the incident as "an altercation between [Plaintiff] and [the other] employee" even though other employees present insisted that Plaintiff's only involvement was being "referred to and insulted." (*Id.* at 8–9.)

In another incident, Plaintiff reported another employee being sexually harassed at work. (*Id.* at 9.) It appears that Plaintiff heard of the (unspecified) harassment through word of mouth, but that the employee was hesitant to report the incident herself. (*Id.*) She had been intimidated by Carrasquillo and Bernado and feared that her job could be at risk if she chose to report. (*Id.*) Plaintiff took it upon himself to report the incident to Superintendent of Schools Baiocco. (*Id.*) He made this report via email; at the same time, he apparently described another incident of harassment. (*Id.*) Plaintiff relayed that a female employee reported to Carrasquillo that she was sexually harassed by a driver for the District. (*Id.*) The driver was also Carrasquillo's close friend. (*Id.*) When informed about the harassment, Carrasquillo responded "What do you want me to do? He is a close friend of mine." (*Id.*) When the female employee escalated this incident, she was apparently terminated. (*Id.*) It appears that Plaintiff's email relayed this entire series of events. (*Id.*) The email also described an incident where Carrasquillo permitted an employee to attend work intoxicated. (*Id.*) Upon receipt of the email, Baiocco agreed to investigate the reports; at the same time, his assistant repeatedly insisted that he would investigate only if Plaintiff, who apparently reported the incidents anonymously, revealed his name. (*Id.*) Plaintiff said that he did not wish to proceed publicly, due to fears of retaliation by Carrasquillo. (*Id.*)

Plaintiff also alleges that he was mistreated due to union activity. For instance, Plaintiff says that he organized with co-workers to work with their union delegate to resolve issues with management. (*Id.* at 5) He was then "warned" by Carrasquillo and Bernado. (*Id.*) In a different

incident, Plaintiff and his union shop steward met with Carrasquillo regarding a conflict related to Plaintiff's clock-in time. (*Id.* at 9.) It appears that the District was calculating Plaintiff's clock-in time in a manner that, he says, violated the union's collective bargaining agreement with the District. (*Id.*) Carrasquillo told Plaintiff, as well as his Union representative, that he would not correct the time to conform with the terms of the collective bargaining agreement. (*Id.*) Carrasquillo then threatened to fire Plaintiff. (*Id.*)

In response, Plaintiff attended and spoke at a large meeting of his union. (*Id.*) In his speech, he said that Carrasquillo violated the union contract and threatened to fire him for speaking out. (*Id.*) After the meeting, Plaintiff, along with other employees, spoke with the union delegates about Carrasquillo's behavior. (*Id.*) A union delegate said that it was obvious Carrasquillo was targeting Plaintiff, and the delegates promised to speak with Carrasquillo. (*Id.*) It appears that shortly thereafter, one of the delegates went to speak to Carrasquillo. (*Id.*) The next day, Plaintiff was terminated. (*Id.*)

On the day of his termination, Plaintiff requested a meeting with district administrators to discuss how he had been targeted by Carrasquillo and Bernado, as well as concerns about his working environment. (*Id.*) At the meeting, Macaluso called him a liar, and said he did not have time to hear Plaintiff's concerns. (*Id.*) As explanation, Macaluso cited a comment Plaintiff purportedly made to Carrasquillo four months prior. (*Id.*) Plaintiff asked for documentation of discipline related to the comment, but received none, and denies that he ever made this comment. (*Id.*)

Earlier during his employment, Plaintiff apparently greeted Bernado in Haitian Creole. (*Id.* at 10.) Bernado responded to the Plaintiff, "You know alot [*sic*] of Creole because you fuck alot [*sic*] of [H]aitian bitches." (*Id.*) The comment was reported to the union the day before

Plaintiff's termination, as well as to Macaluso on the day of Plaintiff's termination. (*Id.*) Additionally, the union filed a grievance asserting that Plaintiff's termination violated the collective bargaining agreement; the District responded that the comment could not be proven. (*Id.*)

Over a month after Plaintiff's termination, apparently as part of the union grievance process, Plaintiff and his union delegate met with Baiocco to discuss his concerns and to try to get Plaintiff's job back. (*Id.*) Biaocco said: "I honestly don't know what lead to you getting terminated." (*Id.*) He also "gave [P]laintiff . . . an ultimatum to hand over the secret recordings and proof he has against defendant Russell Carrasquillo" and told Plaintiff that it was his "last chance" to hand over whatever he had against Carrasquillo and Bernado. (*Id.*)

Two months after Plaintiff's termination, Baiocco updated Plaintiff's reason for termination, which was now declared to be that Plaintiff yelled at two employees. (*Id.*) Plaintiff then filed a FOIL request for his personnel file; he says that it contained no documentation prior to his termination about an inappropriate comment to a supervisor (the original asserted reason he was fired) or of his yelling at two employees (the updated reason). (*Id.*)

Finally, Plaintiff says that he received "a secret video" from a District employee, showing that Carrasquillo blackmailed the employee. (*Id.* at 10.) He asserts that on the video, Carrasquillo asserts that the employee cannot have other employees sign a letter in support of Plaintiff. (*Id.*) Carrasquillo assertedly promises not to seek discipline of the employee for an unrelated incident unless the employee opts to "push the issue" with Plaintiff. (*Id.* (capitalization altered).)

B. Procedural Background

Plaintiff filed a charge of discrimination against the Defendants with the EEOC on April 25, 2025, and received a right to sue letter on August 14, 2025. (Compl. 6, 11.)

On November 6, 2025, Plaintiff commenced the instant action. (*See generally id.*) His Complaint asserts claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. § 1981, N.Y. Exec. Law § 290 et seq, and N.Y. Labor Law § 740. (*Id.* 3–4.)

January 21, 2026, the Court set a briefing schedule on an anticipated Motion to Dismiss by Defendants. (*See* Order dated Jan. 21, 2026 (Dkt. No. 13).) On February 17, 2026, Defendants filed the instant Motion, (*see* Mot.), and a Memorandum of Law in support thereof, (Defs.' Mem.). On March 23, 2026, Plaintiff filed a response. (Pl.'s Opp'n.) On April 2, 2026, Defendants filed their reply brief. (Reply Mem. of L. ("Reply") (Dkt. No. 20).)

II. Discussion

A. Standard of Review

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (quotation marks and

citation omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citations omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank*

*of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted) (citation omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

## B. Analysis

### 1. Individual Liability under Title VII

Defendants argue that, to the extent Plaintiff's Title VII claim is asserted against Defendants Baiocco, Macaluso, Carrasquillo, and Bernado, it must be dismissed as Title VII does not provide for individual liability. (Defs.' Mem 8.) Plaintiff does not meaningfully oppose this argument. (*See generally* Pl.'s Opp'n.)

The Court agrees that it "must dismiss Plaintiff's Title VII claim[]" to the extent it is asserted against the individual Defendants "because Title VII does not provide for individual liability." *White v. Orange Urgent Care, PLLC*, No. 24-CV-6827, 2026 WL 867141, at *4 (S.D.N.Y. Mar. 30, 2026) (footnote omitted); *Chamberlin v. Splashlight, LLC*, No. 23-CV-6318, 2024 WL 5170266, at *5 (S.D.N.Y. 2024) ("Under Title VII, only an employer and not individuals can be liable." (citation omitted)); *Williams v. N.Y.C Dep't of Educ.*, No. 17-CV-1996, 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018) ("In [the Second Circuit], it is long settled that individual defendants may not be subject to liability under Title VII."); *accord Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (affirming the district court's dismissal of the plaintiff's Title VII claims against the individual defendants on the basis that "individuals are not subject to liability under Title VII" (quoting *Wrighten v. Glowski*, 232 F.3d 199, 120 (2d Cir. 2000) (per curiam)). Accordingly, Plaintiff's Title VII claim can be asserted only against the District as his former employer. To the extent that Plaintiff asserts a Title VII claim against the individual Defendants, it is dismissed with prejudice. *See Phillips v. United Food & Com. Workers Union Loc. 2013*, No. 23-CV-8283, 2025 WL 2659087, at *6 (S.D.N.Y. Sept. 17, 2025) (dismissing Title VII claims against individual defendants with prejudice); *Tenemille v. Town of Ramapo*, No. 18-CV-724, 2020 WL 5731964, at *10 (S.D.N.Y. Sept. 24, 2020) (same).

2. Section 1981 Claims Against State Actors

Defendants argue Plaintiff improperly brings claims against a municipality and state actors under 42 U.S.C. § 1981. (Defs.' Mem. 9.) "[Section] 1981 does not provide a separate private right of action against state actors," and § 1983 provides the "exclusive federal remedy" for such claims. *Duplan v. City of New York*, 888 F.3d 612, 619, 621 (2d Cir. 2018) (emphasis

omitted); *see also Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 447 (S.D.N.Y. 2023) (applying *Duplan* to claims against a school district); *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019) (holding that *Duplan* applies not only to claims against the municipality itself but also against individual municipal defendants). Accordingly, Plaintiff cannot bring his "federal claims against [state actors] directly under Section 1981," but must locate her "right to relief for the [state actors'] alleged Section 1981 violations in Section 1983, which provides a cause of action for statutory violations committed under color of state law." *Richardson v. City of New York*, No. 17-CV-9447, 2018 WL 4682224, at *11 (S.D.N.Y. Sept. 28, 2018). As such, the Court considers Plaintiff's § 1981 claims under § 1983, as courts have done in the wake of *Duplan*. *See Duplan*, 888 F.3d at 616 (construing plaintiff's § 1981 claims against state actors as brought under § 1983); *see also Quinones v. City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021) ("We note that a plaintiff may not sue a municipal defendant under [S]ection 1981 alone, and instead must raise any [S]ection 1981 claims through a [S]ection 1983 action. But plaintiffs need not invoke § 1983 expressly in order to state a claim, so long as they plead facts that plausibly indicate liability. This Court has thus construed a plaintiff's claims against a municipality, incorrectly brought under section 1981 alone, as § 1983 claims.") (citation and quotation marks omitted); *In re N.Y. City Dep't of Educ.*, No. 15-CV-7150, 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019) ("Following the Second Circuit's approach in *Duplan*, the Court will construe the § 1981 claims as causes of action brought under § 1983 and discuss whether the claims can survive pursuant to § 1983 caselaw."); *Kirkland-Hudson*, 665 F. Supp. 3d at 447–48 (so-construing claims filed against school district).

Accordingly, the Court will not dismiss Plaintiff's claim pursuant to § 1981, but instead will construe it as one made pursuant to § 1983. Defendants advance no other argument for the

dismissal of this claim. (*See generally* Defs.' Mem.) Accordingly, it is not dismissed at this juncture.

3. NYSHRL Notice of Claim

Defendants move to dismiss Plaintiff's NYSHRL claim as Plaintiff has not alleged that he complied with the Notice of Claim requirement. (Defs.' Mem. 10.) In his opposition brief, Plaintiff does not contest that he failed to comply with the Notice of Claim requirement. (*See generally* Pl.'s Opp'n.) The Court agrees that Plaintiff's NYSHRL Claims must be dismissed for failure to comply with the Notice of Claim requirement.

NYSHRL claims that "are brought against a school district, board of education, or school officer are subject to the notice of claim requirements contained in New York Education Law § 3813(1)." *Nelson v. Mount Vernon City Sch. Dist.*, No. 15-CV-8276, 2017 WL 1102668, at *3 (S.D.N.Y. Mar. 23, 2017) (alteration adopted) (citation omitted). That provision provides, in relevant part, that no "action or special proceeding" shall be "maintained against any school district, board of education," or officer of the same unless "a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months" of when the claim accrued. N.Y. Educ. Law § 3813(1); *see also Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *5 (S.D.N.Y. Sept. 28, 2022) (same). The failure to "'present a claim within the statutory time limitation or to notify the correct party is a fatal defect'" in any such action. *Id.* (emphasis omitted) (quoting *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of N.Y.*, 458 N.E.2d 1241, 1245 (N.Y. 1983)); *see also Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010) (explaining that compliance with Section 3813(1) is a "statutory condition precedent" to suit). "Moreover, plaintiffs must plead compliance with § 3813(1)'s requirements." *Nelson*, 2017 WL 1102668, at

*3; *see also Bernheim v. New York City Dep't of Educ.*, No. 19-CV-9723, 2020 WL 3865119, at *4 (S.D.N.Y. July 9, 2020) ("Failure to plead compliance with a notice of claim requirement constitutes a defect warranting dismissal of a complaint on the ground that it fails to state a cause of action." (alteration adopted and quotation marks omitted)), *report and recommendation adopted*, 2020 WL 4383503 (S.D.N.Y. July 31, 2020).

Nowhere in his Complaint does Plaintiff allege that he served a notice of claim on the District within the relevant time period. (*See* Compl.) Nor can Plaintiff's filing with the EEOC satisfy this requirement—although, in some circumstances, EEOC filings may suffice to provide a notice of claim, they must be served on the governing board of the school district, *United States v. New York City Dep't of Educ.*, No. 16-CV-4291, 2017 WL 1169653, at *3 (S.D.N.Y. Mar. 28, 2017) (explaining that administrative filings that put a school district on notice of the precise claims alleged, which are served on the governing board of the district within the statutory time period, may satisfy the notice of claim requirement), and there is no allegation that Plaintiff complied with this requirement anywhere in Plaintiff's filings, (*see* Compl.; Pl.'s Opp'n). Accordingly, Plaintiff's NYSHRL claims against both the District and the Individual Defendants are barred for failure to comply with the Notice of Claim requirement.

4. Whistleblower Claims

Defendants argue that Plaintiff cannot sustain a NY Labor Law § 740 claim against the District because that statute does not permit claims against public employers. (Defs.' Mem. 13.) They are correct: "New York Labor Law § 740 does not apply to 'public employers' who are instead covered by New York Civil Service Law § 75–b." *Berlyavsky v. New York City Dep't of Env't Prot.*, No. 14-CV-3217, 2015 WL 5772255, at *3 n.3 (E.D.N.Y. Sept. 30, 2015). Defendants also correctly argue that no New York Labor Law § 740 claim can lie against the

individual Defendants. (Defs.' Mem. 13.) "The plain language of the NYLL provides that '[a]n employer shall not take any retaliatory action against an employee,' and that an '[e]mployer means any person, firm, partnership, institution, corporation, or association that employs one or more employees.'" *Hernandez v. DiaSorin Inc.*, No. 25-CV-846, 2025 WL 3706579, at *10 (S.D.N.Y. Dec. 22, 2025) (quoting New York Labor Law § 740). "Since the [i]ndividual Defendants are not 'employers' under this definition, the claims against them must be dismissed." *Id.*; *see also McSweeney v. Cohen*, 776 F. Supp. 3d 200, 277 (S.D.N.Y. 2025) (same).

As Plaintiff is proceeding pro se, the Court considers whether he could state a viable claim under Section 75-b of the Civil Service Law. "A plaintiff pursing a claim under Section 75–b of the Civil Service Law must comply with the notice requirements of county law and general municipal law" described in the preceding subsection II.B.3. *Kretzmon v. Erie County*, No. 11-CV-0704, 2013 WL 636545, at *9 (W.D.N.Y. Feb. 20, 2013); *see also Dingle v. City of New York*, 728 F.Supp.2d 332, 348 (S.D.N.Y.2010) (same). Insofar as Plaintiff's Complaint should be construed to raise a claim against the District under Section 75-b of the Civil Service Law, the Court must dismiss this claim for failure to comply with the notice of claim requirement. To the extent that the Complaint could be construed to raise such a claim against the individual Defendants, it must be dismissed because this Section does not permit individual liability. *See Rivera v. New York City Dep't of Educ.*, No. 21-CV-6134, 2023 WL 2563665,at *14 (E.D.N.Y. Feb. 3, 2023) (dismissing whistleblower claims against individual defendants because statute does not provide for individual liability); *Mulvaney v. City of Rochester*, No. 18-CV-6367, 2019 WL 2250014, at *11 (W.D.N.Y. May 22, 2019) ("Defendants' motion to dismiss the 'whistleblower claim' under NY Civil Service Law § 75-b is granted as to [an individual

defendant] because individuals may not be held personally liable under this statute."); *Portelos v. City of New York*, No. 12-CV-3141, 2016 WL 11469183, at *8 (E.D.N.Y. Aug. 13, 2016) ("Defendants argue that Plaintiff's claims against the individual defendants pursuant to § 75-b must be dismissed because this provision does not permit claims against individual employees. They are correct.")

## III. Conclusion

For the reasons set forth above, the Motion to Dismiss granted in part and denied insofar as it sought dismissal of Plaintiff's 42 U.S.C. § 1981 claim, which the Court construes as a claim brought pursuant to 42 U.S.C. § 1983. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 17.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge